UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 16-00271-TLM |
| LAURA ANN MATHEWS, ) | |
| ) | Chapter 13 |
| Debtor. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**
_____

**INTRODUCTION**

Three matters are currently before the Court. The chapter 13 trustee, Kathleen McCallister ("Trustee"), seeks to dismiss this case under § 1307(c) alleging "unreasonable delay." *See* Doc. No. 30.[1] Laura Ann Mathews ("Debtor") objects to dismissal, and instead seeks an order confirming her plan over Trustee's objections to confirmation. *See* Doc. No. 41. And Trustee objects to one of Debtor's claims of exemption, which has ramifications in the event the plan's confirmation is considered. *See* Doc. No. 43. That exemption is based on Idaho Code § 11-604(1)(b) and (2) and relates to past due and unpaid child support with an asserted present value of $7,132.00. *See* Doc. No. 35 (amended scheds. A/B

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure ("Civil Rules") incorporated thereby.

MEMORANDUM OF DECISION - 1

and C).[2]  These three matters came on for hearing on February 15, 2017, and the Court took them under advisement.  This Decision constitutes the Court's findings and conclusions.  Rules 7052, 9014.

**BACKGROUND AND FACTS**

Debtor has faced a number of financial challenges.  These include the failure of her ex-husband, Neil Michel ("Michel"), who now resides in California, to pay court-ordered child support.  In addition, though she is employed, Debtor has coped with a number of serious and expensive medical issues resulting from repeated knee surgeries.

   a.   **Debtor's budget and related medical issues**

Debtor's schedule I, filed in March 2016, establishes she is employed and has a monthly take home pay of $2,055.56.  Ex. 200 at 36–37.[3]  She also listed $700.00/month as a housing expense and $50.00/month for electricity, heat and natural gas utilities on schedule J.  *Id.* at 38.  She testified that she was financially unable to live on her own and was required to move in with her mother.  The scheduled rent and utilities were what Debtor intended to pay her mother.  Unfortunately, circumstances prohibited her from being able to make such

---

[2]  This amended schedule was also admitted at hearing as Exs. 107 and 204.  The testimony makes clear that this is solely child support, and not spousal support.

[3]  Schedule I also indicated receipt of $290.00 per month in back child support, an issue discussed more fully below.

MEMORANDUM OF DECISION - 2

payments since the time the case was filed. Debtor's last amended schedule J, Ex. 206, deletes both amounts.[4] Debtor also explained that, if she was not able to live with her mother and—at present—avoid the rent and utility expense, she would not be able to pay her other expenses and the plan payments to Trustee.

In 2010, Debtor had her first knee surgery to deal with a torn meniscus. She reinjured the same knee and had a second surgery. The second surgery was not successful, and in October 2015 she had a total knee replacement. These surgeries were conducted in Boise. But Debtor continued to have significant problems with her knee and ultimately consulted doctors in Salt Lake City and had a fourth surgery there in August 2016. That doctor determined there were issues with hyperextension, but also that the implants inserted in the prior knee replacement were misaligned.[5]

These medical issues have had a direct and significant financial effect. Debtor's budget reflects a $314.00/month medical expense. This results from

---

[4] As of the February hearing, Debtor still lives with her mother, as she cannot afford to move out and pay rent and related costs. Debtor's latest budget includes a monthly expense for a storage unit where Debtor has her personal furniture and effects. (This expense was, according to Debtor, overlooked when preparing prior schedules.) She explained that she hoped to improve her situation and eventually be self-sufficient in regard to her housing, and she would need the stored property or be faced with the expense of replacement. Trustee's attempts to cast this as an unreasonable expense were not persuasive.

[5] According to Debtor, she would not go back to the same Boise doctor, and she was unsuccessful at getting referrals to or being seen by other Boise specialists. This resulted in her need to go to Utah. Given the circumstances, it seems odd that Debtor has not disclosed in schedule B any potential cause of action for the misalignment of the knee implant. However, that aspect was not explored at the hearing.

MEMORANDUM OF DECISION - 3

prescriptions to deal with the knee pain and also chronic migraines. She also incurs, every three months, the cost of a motel and out-of-pocket expenses for trips to Utah for medical care.[6] Additionally, Debtor's previous health insurance policy had a $750.00 deductible and a $3,750.00 out-of-pocket maximum. She has been required to go to a policy with a $2,600.00 deductible and a $3,000 maximum. The health insurance deduction from her wages on schedule I went from $142.00/month at filing to $302.00/month at the time of the hearing.[7] Debtor also contributes $100.00 from each of her biweekly paychecks to a flex-spending account (HSA) to use toward her uninsured medical expenses.

Debtor is a below-median income debtor, and she proposed a 36-month chapter 13 plan with monthly payments of $222.00. Ex. 201.[8] Despite the issues she has faced, Debtor has remained current in those payments to Trustee. And, contrary to the assertions made or implied by Trustee, there is no "fat" in the budget. But for significant subsidization of Debtor's living expenses by her mother, and Debtor's approach to her other expenses, there is no excess.

    **b.**    **The back child support**

---

[6] This is an expense shown separately from general transportation expense. Her latest budget actually reduced her general transportation expense because she has been allowed some opportunity to telework.

[7] *See* Exs. 200 at 37, 206 at 3.

[8] Debtor filed a chapter 13 because she had a chapter 7 case in 2009 and received a discharge therein.

MEMORANDUM OF DECISION - 4

An audit report from the State of California indicates the total amount of past due child support owed by Michel as of May 2016 is $76,877.65. Ex. 205. Several aspects of that support obligation are at issue.

First, the support was ordered in regard to two of Debtor's three children.[9] One is a daughter who is presently 28 years old, and the other is a daughter who is presently 27 years old. Both these daughters are single and do not live with Debtor.[10] The testimony established that the ongoing support obligations terminated at the time the younger daughter turned 18 about 9 years ago. The outstanding amount reflects Michel's failure to pay all required support before that date.[11]

Second, Michel's payments on the child support obligation have been erratic. The audit report, Ex. 205, shows only those payments received from May 2007 through May 2016. Though payments were made regularly during certain periods, that was not always the case. Debtor indicated the cessation or reduction

---

[9] Debtor testified that the support was in regard to her two older children, and that the initial amount of support ordered was $700.00 per month until those children reached 18 years of age.

[10] The eldest daughter moved to California to live with Michel when she was 17, though the testimony did not suggest the monthly child support obligation was then changed.

[11] Apparently the $700.00/month figure remained the same and in effect, but amounts received were allocated to back support owed.

MEMORANDUM OF DECISION - 5

in amounts of payments was due to Michel's loss of employment.[12]

At the time of filing, Debtor indicated the support payments regularly received totaled $290.00 per month. Ex. 200 at 37. On December 27, 2016, Debtor amended her schedule I to indicate that monthly amount received was $164.54, and a February 7, 2017 amendment rounded that figure to $164. Exs. 203, 206.[13]

Third, Debtor testified that, according to one of her daughters, Michel (who is presently 56) not only lost his employment but has been diagnosed with Parkinson's Disease. Debtor's efforts to communicate with Michel to discuss his health, employment situation and medical problems have been unsuccessful.

Given the history of irregular and insufficient payments, the accrual of a large back support obligation, and the issues with Michel's employment and health, the parties were faced with the need to evaluate not only the likelihood and possible amount of ongoing payments during the plan (a budget issue), but also the present value of the obligation for § 1325(a)(4) purposes. As noted, Debtor claimed the back support as exempt. If correct, this eliminates the significance of the present value issue. However if, as Trustee maintains, this asset is not exempt,

---

[12] Some payments were evidently taken from Michel's unemployment compensation. And Debtor testified that a sizeable payment was made after the State of California seized and liquidated Michel's 401(k) to satisfy part of the delinquent obligation.

[13] Debtor testified that she and her counsel calculated the weekly support received at approximately $38.00 ($164.00/month ÷ 4.3 weeks/month = $38.14/week).

MEMORANDUM OF DECISION - 6

its value must be determined and included in the statutorily required analysis.

Debtor made seriatim assertions as to the existence and value of the back support. The initial March 2016 schedule B did not disclose it. Ex. 200 at 11. A June 2016 amended schedule B asserted there was past due child support in the amount of $76,877.65 with the statement: "Value shown when reduced to present value" of $7,132.00. Exs. 106, 202. A December 2016 amended schedule B reflected the same gross and present value amounts but added "Value shown when reduced to present value due to uncollectability because ex husband has been diagnosed with Parkinsons disease." Exs. 107, 204.

The manner in which the $7,132.00 present value of this asset was reached was addressed at length. In 2016, Debtor's counsel, Bart Green, and Trustee's counsel, Holly Sutherland, met to discuss and address this matter. In her preparation for that meeting, Ms. Sutherland had discussed the valuation issue or process with two of the District's chapter 7 trustees.

During their meeting, Mr. Green and Ms. Sutherland accessed a website that they used to determine present value for the purposes of their calculations and discussions. Ms. Sutherland testified that they utilized a 15% discount rate on the total outstanding $76,877 obligation and arrived at the $7,132.00 figure. She further testified that she represented at that meeting to Mr. Green that they "had an agreement" as to the present value, and she believes this was the reason Debtor

MEMORANDUM OF DECISION - 7

amended her schedule B to reflect the $7,132.00 present value.

Ms. Sutherland also testified that she did not, at that time, have actual or express authority from Trustee to reach such an agreement. However, she admitted since she took on the role of staff attorney in August 2015 she has regularly appeared for Trustee in Court, prepared documents and pleadings for filing and filed the same, and made agreements with attorneys on behalf of Trustee.

At a January 18, 2017 preliminary hearing on the present matters, Ms. Sutherland said the parties had "not been able to agree on valuing [this] asset for purposes of the best interest test[.]" Ex. 104 at 3. However, she subsequently conceded, "[W]e had agreed to a [present value] number" and it was only later that she determined she may have made a mistake in calculating it. *Id.* at 7–8. She was nonetheless quite clear at the January hearing that she and Mr. Green "had met and we came to the number and I . . . definitely portrayed to Mr. Green that we had reached an agreement." *Id.* at 8. She was similarly clear at the February hearing that she represented to Debtor's counsel that they had reached, and did have, an unconditional agreement as to the present value of the asset.[14]

---

[14] Ms. Sutherland is to be commended for her candor and for not equivocating on whether she did in fact make an agreement with opposing counsel. Of greater concern to the Court is her comment that she lacked express authority to take positions and make agreements on behalf of Trustee. If all her acts over the last year and a half as counsel for Trustee were conditional only and required Trustee's blessing, it was never made clear to the Court, and

(continued...)

MEMORANDUM OF DECISION - 8

**DISCUSSION AND DISPOSITION**

    A.    **The enforceability of the agreement as to the present value of the back child support obligation**

This Court in *In re AICO Recreational Props., LLC*, 2003 WL 1964190 (Bankr. D. Idaho Apr. 11, 2003), made the following observation:

> Decisional law is rife with observations about the importance of negotiated settlements of disputes. They are, for several prudential reasons, to be encouraged. This might be viewed as particularly true in bankruptcy litigation, where the preciousness of both time and money is accentuated. To be of value, however, settlements must be enforceable and must be enforced. If parties were at liberty to disavow their prior agreements, there would be a serious impact on the utility of freely-bargained settlements of disputes.

*Id.* at *4–5 (further citing and quoting from *In re Blele*, 03.1 I.B.C.R. 85, 86 (Bankr. D. Idaho 2003)). The Court also expressed an aversion to attacks on or disavowals of prior agreements, noting that "While the agreement . . . may have been regretted or even made by the lawyer without his client's consent, it was nevertheless entitled to be enforced, and 'neither ignorance nor carelessness on the part of the litigant *or his attorney* provide grounds for relief under [Civil] Rule 60(b)(1).'" *Id.* at *5.

The Court also held in *Callies v. O'Neal (In re O'Neal)*, 2012 WL 6107492 (Bankr. D. Idaho Dec. 10, 2012), that parties are bound by the conduct of their

---

[14] (...continued)
frankly would appear to be unworkable as a practical matter, not to mention being fundamentally inconsistent with principles of legal representation as discussed below.

MEMORANDUM OF DECISION - 9

attorneys, and that "any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent[.]" *Id.* at *2 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962)). *O'Neal* further notes that a client "is presumed to have voluntarily chosen the lawyer as his representative and agent [and] ordinarily cannot later avoid accountability for negligent acts or omissions of his counsel." *Id.* (quoting *In re Hartman*, 2009 WL 4263503, *3 n.7 (Bankr. D. Idaho Nov. 24, 2009)).

Ms. Sutherland's comments as to a lack of actual or express authority are not determinative. In addition to the authorities discussed above, *In re Kollel Mateh Efraim, LLC*, 334 B.R. 554 (Bankr. S.D.N.Y. 2005), stated: "An attorney can bind his client to a settlement only when the client has authorized him to [do] so. An attorney may nevertheless enter into a binding settlement if he has apparent authority, and the opposing attorney has no reason to doubt it." *Id.* at 559. After considering whether a party might rebut the presumption of actual authority with affirmative evidence (a "not insubstantial burden"), the court further addressed the issue of apparent authority. "Apparent authority consists of two elements: (1) a manifestation by the principal that the agent has authority and (2) reasonable reliance on that manifestation by the person dealing with the agent. . . . Only the principal can manifest the attorney's authority; the attorney cannot

create apparent authority by his manifestation alone." *Id.* at 560.

By virtue of Ms. Sutherland's testimony, and by this Court's observations in numerous hearings since August 2015, Trustee has manifested Ms. Sutherland's authority. She has allowed her counsel to appear and participate—without Trustee being present—in hearings in hundreds of chapter 13 cases, take positions on legal issues and procedures in those cases, agree to resolutions of disputes, and essentially act with full apparent authority. The Court can recall but a few occasions when Ms. Sutherland would demur at a suggested resolution, indicating in those rare instances that she "would need to check with Trustee." Indeed, the infrequency of such occurrences simply reinforces the perception and implicit representation that she otherwise had the requisite authority to act for Trustee.

At hearing, Debtor urged that the $7,132.00 present value figure for the back child support was conclusively established by the agreement. Ms. Sutherland does not deny an agreement was reached. Given Ms. Sutherland's apparent authority, that agreement should and must be enforced. The Court finds the present value of the support has been agreed by the parties to be, and it therefore is, $7,132.00.[15]

---

[15] Debtor also attempted at some length during the hearing to buttress the validity of the $7,132.00 figure by engaging in a different analysis. Her counsel's legal assistant testified she utilized an Internet resource (Aqua-Calc.com); Michel's age (56 years old); his projected life expectancy (an additional 24 years, based on Social Security Administration tables); an assumption—which the Court views as questionable given the evidence—of Michel's payment
(continued...)

MEMORANDUM OF DECISION - 11

### B.    The exemption claimed in back child support

Debtor claimed the $7,132.00 present value of the back due child support exempt under Idaho Code § 11-604(1)(b).[16]  Ex. 204 at 7 (amended sched. C filed Dec. 27, 2016).  Trustee objected to the amended exemption, Doc. No. 43, and that objection is timely under Rule 4003(b)(1).

Idaho Code § 11-604 provides:

(1) An individual is entitled to exemption of the following property to the extent reasonably necessary for the support of him and his dependents:

. . .
    (b)    money or personal property received, and rights to receive money or personal property for alimony, support, or separate maintenance;
. . .

(2) The phrase "property to the extent reasonably necessary for the support of him and his dependents" means property required to meet the present and anticipated needs of the individual and his dependents, as determined by the court after consideration of the individual's responsibilities and all the present and anticipated property and income of the individual, including that which is exempt.

As the objecting party, Trustee has the burden of proving the claim of exemption is not proper.  Rule 4003(c); *Carter v. Anderson (In re Carter)*, 182

---

[15] (...continued)
and Debtor's receipt of $1,968 in support payments per year (or $48,300 over that 24 year life expectancy); and a discount rate of 8.5% to arrive at a discounted present value of $7,800.  The significance of this effort is now irrelevant since the present value has been conclusively established for purposes of this case by the prior agreement between counsel.

[16] Idaho has opted out of the Code's exemption scheme, *see* § 522(b)(2) and Idaho Code § 11-609.

MEMORANDUM OF DECISION - 12

F.3d 1027, 1029 n.3 (9th Cir. 1999). The validity of the exemption is determined as of the petition date. Section 522(b)(3)(A); *Culver, LLC v. Chiu (In re Chiu)*, 266 B.R. 743, 751 (9th Cir. BAP 2001). Once the objecting party presents sufficient evidence to rebut the presumptive validity of the exemption, the burden of production of evidence then shifts to the debtor, however the burden of persuasion always rests on the objector. *Carter*, 182 F.3d at 1029 n.3.

The parties raise no specific factual issues regarding the exemption claim. They agree that the funds are back child support owed to Debtor by Michel; that the children who were the subject of the support obligation reached majority many years ago; and that the funds at issue will likely be received, if at all, over a period of years. And, as noted above, they agreed that the present value of those funds is $7,132.00. What is not agreed, however, is whether the language of the Idaho statute, properly construed, supports the claimed exemption.

*In re Russell*, 163 B.R. 584 (Bankr. D. Idaho 1994), addressed the Idaho Code § 11-604(1)(b) support exemption. In *Russell*, the debtor received a parcel of real property from the support obligor to satisfy a $15,000 back child support obligation. The Court disallowed the claimed exemption, emphasizing that Idaho Code § 11-604(1)(b) exempts property only "to the extent reasonably necessary for the support of [the recipient] and his dependents," and that this phrase is defined by Idaho Code § 11-604(2) to mean "property required to meet the *present*

MEMORANDUM OF DECISION - 13

and *anticipated* needs of the individual and his dependents." 163 B.R. at 585. *Russell* further stated: "Reimbursement of the debtors for money expended [by the support obligee] to make up for unpaid child support is not a present or anticipated need, and the property is therefore not exempt." *Id.* It concluded "[A] debtor cannot preserve the exemption . . . by paying for the children's needs from his or her personal assets; the exemption is only for present and future needs, not past needs." *Id.* at 586.[17]

In the present case only child support, and not spousal support, was to be paid by Michel. Both daughters subject to that obligation reached the age of majority many years ago. There is no doubt that Debtor's present circumstances are difficult, and that she certainly has "present and anticipated needs." But the support at issue was solely for the support of the daughters from the time of Debtor's divorce from Michel through, at the latest, a date about nine years ago. The decision in *Russell* controls.[18]

---

[17] *Russell* was later considered by the Court in *In re Marriott*, 427 B.R. 887 (Bankr. D. Idaho 2010), but was found distinguishable. The Court concludes that *Marriott* is itself distinguishable from the case at bar.

[18] Since *Russell* cannot be fairly distinguished, Debtor appears to urge this Court's reconsideration and rejection of it based in large part on other state courts' and bankruptcy courts' construction of other states' statutes. *See*, *e.g.*, *In re Roberts*, 532 B.R. 906 (Bankr. N.D Ohio 2015) (addressing Ohio statute and case law); *see also In re Deboer*, 1999 WL 33486710, *3 (Bankr. D. Idaho July 20, 1999) (discussing stare decisis and the idea that while not bound to follow its prior rulings, a bankruptcy court promotes consistency and predictability by doing so and should depart from its prior decisions "only upon compelling circumstances"). Here, the Court does not find compelling reasons to depart from *Russell*.

MEMORANDUM OF DECISION - 14

Trustee's objection to exemption is well taken and it will be sustained.

### C. The motion to dismiss

Trustee argues that the case should be dismissed under § 1307(c) for "cause" and asserts further that the cause consists of an "unreasonable delay" on the part of Debtor. That motion further notes the issues, discussed at length above, about the valuation and treatment of the back child support, and it acknowledges the summer 2016 meeting at which the $7,132.00 present value figure was reached. It was the six month delay between those events and the filing of the motion that Trustee views as unreasonable. But the motion and Trustee's argument ignores the fact that it was Trustee's intransigence, and refusal to adhere to the agreed, present value figure reached during the 2016 meeting of counsel which helped create the delay.[19]

The Court finds Trustee's contention that Debtor failed to timely prosecute her case, or delayed to the detriment and prejudice of creditors, to be unproven. The motion to dismiss, Doc. No. 30, will therefore be denied.

### D. Debtor's motion to confirm the plan over Trustee's opposition

Debtor conceded that, in the event the back support was determined to be non-exempt, she would need to amend the proposed plan to deal with the addition

---

[19] The motion admits Trustee, post-meeting, calculated a different ($17,911) present value, and the parties had discussed the matter "on multiple occasions," and failed to reach a resolution. How this supports laying the blame for "unreasonable delay" solely on Debtor was not adequately addressed.

MEMORANDUM OF DECISION - 15

of $7,132.00 to the calculations required under § 1325(a)(4). Debtor's motion to confirm the plan will therefore be denied, without prejudice to the filing of an amended plan.[20]

**CONCLUSION**

Based on the foregoing, the Court will enter Orders (1) denying Trustee's motion to dismiss; (2) sustaining Trustee's objection to exemption; and (3) denying without prejudice Debtor's motion to confirm the present plan.

DATED: March 6, 2017



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[20] Given the tenor of the hearing and comments of counsel suggesting the parties have had preliminary discussions about confirmation of a plan that includes, for § 1325(a)(4) purposes, the $7,132.00, the Court would also entertain an agreed form of order of confirmation so long as the rights and interests of creditors are not negatively impacted by the necessary additional terms of such an order.

MEMORANDUM OF DECISION - 16